NOT DESIGNATED FOR PUBLICATION

No. 125,118

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

J.D.K.,
*Appellee*,

v.

D.D.B. JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Opinion filed January 13, 2023. Affirmed.

*D.D.B. Jr.*, appellant pro se.

*Richard H. Seaton*, of Seaton Law Offices, LLP, of Manhattan, for appellee.

Before ATCHESON, P.J., BRUNS, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: This appeal arises from protection from stalking proceedings initiated by J.D.K. against D.D.B. concerning various hostile encounters between them as a result of a dispute over the boundary between their two properties in Herington. The hostilities apparently began between D.D.B. and J.D.K.'s mother in 2020. Thereafter, J.D.K.'s parents passed away and the hostilities continued in the spring of 2021 when J.D.K., who lives in Kansas City, was taking care of her parents' home until the property could be sold. D.D.B. lived next door.

The district court granted an ex parte temporary order for protection from stalking, and eventually a final order after a trial. D.D.B. appeals from the district court's

temporary and final orders and the district court's failure to hold a hearing on D.D.B.'s claim of immunity and his counterclaims against J.D.K. We find no error in the district court's proceedings and affirm. J.D.K. has moved for the assessment of attorney fees on appeal. We find merit in J.D.K.'s motion and assess her attorney fees on appeal against D.D.B.

The parties proceeded pro se during all the proceedings in the district court. Thus, the parties are well acquainted with the dispute between them that led to these proceedings, and it is unnecessary to recount it now in detail.

On October 5, 2021, the day J.D.K. filed her petition, the district court entered a temporary order of protection from stalking and set the matter for an evidentiary hearing on October 19, 2021. The parties appeared by way of Zoom for the evidentiary hearing. D.D.B. filed his answer and counterclaim on the day of the hearing but had not yet served J.D.K. with a copy. In his responsive pleading D.D.B. denied J.D.K.'s allegations, claimed he was entitled to immunity, and sought a protection from stalking order against J.D.K. as well as $350,000 for his emotional distress. The court continued the evidentiary hearing to November 16, 2021, to allow D.D.B. to serve J.D.K. with his answer and counterclaim.

On November 16, the district court conducted a Zoom evidentiary hearing at which both parties testified. At the conclusion of the hearing, the court determined that J.D.K. met her burden to show that D.D.B. stalked her and granted a final protection from stalking order.

In his posttrial filing, which the court construed as a motion to reconsider, D.D.B. argued that the court refused to hear testimony to support his counterclaim and hold a separate hearing to determine that D.D.B. enjoyed immunity for his actions. At the December 7, 2021 hearing on D.D.B.'s motion, the court conceded that it had not allowed

2

D.D.B. to present his "full case, your full evidence . . . . I think I did cut you off." The district court reopened the proceedings to allow D.D.B. to present his evidence and set the matter for another evidentiary hearing on December 14 to address D.D.B.'s case.

Following that second evidentiary hearing, the district court reaffirmed its finding that J.D.K. met her burden to prove the stalking allegations and that D.D.B. was a physical threat to J.D.K.'s safety. The court entered a final order of protection from stalking. The district court also found that D.D.B. did not meet the burden to prove his counterclaim. This appeal followed.

*The Granting of a Temporary Protection Order*

D.D.B. argues that J.D.K's allegations of stalking were insufficient for the district court to grant a temporary order of protection. Whether the allegations in J.D.K.'s petition were legally sufficient to support the issuance of a temporary order of protection is an issue of law over which we have de novo review. *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007).

Under the Protection from Stalking, Sexual Assault, or Human Trafficking Act (the Act), the district court may enter a temporary order of relief, upon good cause shown, "as it deems necessary to protect the victim from being stalked . . . . Temporary orders may be granted ex parte on presentation of a verified petition by the victim supporting a prima facie case of stalking." K.S.A. 2021 Supp. 60-31a05(b).

"Stalking" is defined under the Act as the "intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 2021 Supp. 60-31a02(d). "Harassment" is defined as "a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 2021 Supp. 60-

3

31a02(d)(1). To establish a "course of conduct" requires a showing of "two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress." K.S.A. 2021 Supp. 60-31a02(d)(2).

D.D.B. argues that the allegations in J.D.K.'s petition do not meet the definition of stalking. He argues the allegations can be summed up as (1) digging a trench, (2) dismantling a fence, (3) battery, and (4) staking a string. He contends that J.D.K. failed to show two separate acts that have no legitimate purpose and that reveal a continuity of purpose, causing a reasonable person emotional distress. He concludes that because the petition was legally insufficient to allege stalking, the district court lacked jurisdiction to enter a temporary order.

J.D.K. counters that she established a prima facie case of stalking in the petition when she alleged that D.D.B. harassed her generally, physically attacked her, and destroyed her fence. She also alleged in her petition that D.D.B. interfered with prospective buyers of the property in an effort to hinder J.D.K.'s efforts to sell the home of her deceased parents. She argues that there were more than two incidents directed at her that were intentional and that evidence showed a continuity of purpose to intimidate and scare her. She alleged in her petition that she needed a protection order because of her fear for her own safety. She contends that being harassed, assaulted, and insecure in one's own property because of a neighbor's actions would cause a reasonable person distress, worry, and fear for her safety or cause annoyance, torment, or terror to varying degrees. She argues there was no legitimate or constitutionally protected reason for D.D.B.'s actions. J.D.K. notes that D.D.B. himself testified that his purpose was to intimidate her.

In *C.M. v. McKee*, 54 Kan. App. 2d 318, 322, 398 P.3d 228 (2017), the court explained that a valid stalking claim requires proof of the following elements:

4

- "At least two separate acts;
- Directed at a specific person;
- Intentionally done;
- Showing a continuity of purpose that would cause a reasonable person to suffer substantial emotional distress;
- Placing the person in reasonable fear for his or her safety;
- Through conduct that seriously alarmed, annoyed, tormented, or terrorized the person; and
- That served no legitimate purpose and was not constitutionally protected."

J.D.K. alleged at least three separate intentional acts by D.D.B. directed at her: (1) he dismantled a longstanding fence on her property; (2) he yelled at her, physically attacked her, and knocked her to the ground causing her bodily injuries; and (3) he interfered with her efforts to sell the home of her deceased parents. J.D.K. said that she feared for her safety. D.D.B.'s actions—destruction of and interference with J.D.K.'s property and physically attacking her—would cause a reasonable person emotional distress. These actions as alleged evidenced no self-evident legitimate or constitutionally protected purpose. Thus, J.D.K's petition was legally sufficient, and the court did not err by granting a temporary order of protection from stalking subject to the final hearing on J.D.K.'s claim.

*The Presentation of Evidence at Trial Not Specifically Referenced in the Petition*

D.D.B. argues that he was prejudiced in presenting his case when the district court entered its final order based on evidence of events J.D.K. testified to at the initial evidentiary hearing that were not in the petition and which he was not prepared to defend against.

5

The district court was entitled to rule on J.D.K.'s request for a final order of protection based on the relevant evidence admitted at trial. J.D.K.'s testimony was admitted into evidence without objection. D.D.B. is precluded from now challenging the admission of that evidence at trial. K.S.A. 60-404; *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 25, 327 P.3d 1014 (2012). Moreover, the challenged testimony was clearly relevant to D.D.B.'s claim of stalking, and the district court did not err in considering it.

Besides, while all of D.D.B.'s conduct was not spelled out in minute detail in J.D.K.'s petition, D.D.B. was put on notice of the claim that he was generally harassing J.D.K. As stated in *Redondo v. Gomez*, No. 109,642, 2014 WL 802268 (Kan. App. 2014) (unpublished opinion):

> "The petition need not state with particularity each and every detail of the purported stalking or harassment. A defendant in a proceeding under the Act has the right to use civil discovery to learn those details. . . . Gomez did not avail himself of those options to explore the particulars of what Redondo had asserted in the petition. Had he done so, he would have learned the details of the threat. Gomez cannot assert a valid due process claim based on his failure to use the tools the legal process has provided to avoid precisely what he now complains about on appeal." 2014 WL 802268, at *4.

D.D.B. was present at the November 16, 2021 evidentiary hearing where J.D.K. testified in detail about the claims raised in her petition. D.D.B. had until the reopened hearing on December 14 to prepare to address J.D.K.'s claims. During the interim he arranged for the testimony of a neighbor, who testified on his behalf about an encounter with D.D.B. and two encounters between J.D.K. and D.D.B.'s significant other which the neighbor considered to be of a harassing nature. D.D.B. also testified about J.D.K.'s efforts to block him from building a fence. D.D.B. could have addressed J.D.K.'s claims point-by-point at the reopened hearing and questioned J.D.K. by recalling her to the stand. He chose not to. We find no prejudice to D.D.B. from the district court's ruling.

*D.D.B.'s Defense that He Was Immune from Civil Liability on J.D.K.'s Claim*

One of J.D.K.'s allegations in her petition was that D.D.B. attacked her and knocked her to the ground while she was on her property. In his answer D.D.B. asserted: "Even if plaintiff did sustain injuries from the fall defendant claims immunity from liability from any bodily harm that the plaintiff may have sustained while defendant was defending himself."

To support his claim of immunity, D.D.B. relies on K.S.A. 2021 Supp. 21-5231, which is contained in the Principles of Criminal Liability under Article 52 of our Criminal Code. K.S.A. 2021 Supp. 21-5231 provides immunity "from criminal prosecution and civil action" from the use of force that is deemed justified under certain criminal statutes—K.S.A. 2021 Supp. 21-5222, 21-5223, and 21-5225. These statutes relate to one's defense against another's imminent use of unlawful force; to the defense of one's home, place of business, or occupied vehicle against an unlawful entry or attack; or to the defense of property in one's lawful possession against unlawful interference.

D.D.B. contends that the district court erred in not holding a separate hearing to determine whether he was immune from civil liability on J.D.K.'s claims under K.S.A. 2021 Supp. 21-5231.

D.D.B. concedes that the immunity statute lacks direction as to how a determination of immunity from civil liability should be conducted. His solution is a pretrial motion to dismiss, though D.D.B. never filed a motion to dismiss based on a claim of immunity. Nor is there any evidence in the record that he brought to the court's attention, either before or during the initial evidentiary hearing on J.D.K.'s petition, the claim that he was immune from civil liability for any of his actions. D.D.B. cites two portions of the trial transcript where he claims he attempted to raise his immunity claim.

7

We have examined those portions of the record, and they make no reference to a claim of immunity.

In his posttrial motion, which the court construed as a motion to reconsider, D.D.B. contended that the court "refused to hold a hearing separate from trial and order the plaintiff to demonstrate probable cause that the defendant's use of force was not lawful." He cites nothing in the record where he asked for a hearing on the immunity claim and the court refused a hearing.

At the hearing on D.D.B.'s posttrial motion the court acknowledged that after finding that J.D.K. had established a prima facie case at the initial evidentiary hearing on her petition, the court cut D.D.B. off and did not allow him to present his defenses. The court set a date for a rehearing to allow D.D.B. to present his defenses before deciding whether to enter a final protection from stalking order. At the reopened evidentiary hearing that followed, D.D.B. made no reference whatsoever to a claim of immunity.

At the conclusion of the reopened evidentiary hearing, the court reaffirmed its finding that J.D.K. had met her burden of proof to support a protection order. Because D.D.B.'s claim of immunity was never brought to the court's attention at the hearing, the court also found that it had jurisdiction over the parties and the subject matter.

Under these circumstances, D.D.B. having failed to request a separate hearing on his immunity claim and having failed to address his immunity claim either before or during the initial evidentiary hearing or at the rehearing, we find this claim of error to be without merit.

8

*D.D.B.'s Counterclaim*

D.D.B. argues that, under K.S.A. 2021 Supp. 60-31a08 of the Act, he was entitled to assert a counterclaim to J.D.K.'s petition, that he did assert a counterclaim, and that the district court failed to consider it. K.S.A. 2021 Supp. 60-31a08 states:

> "Except as otherwise provided in the protection from stalking, sexual assault or human trafficking act, any proceedings under this act shall be in accordance with chapter 60 of the Kansas Statutes Annotated, and amendments thereto, and shall be in addition to any other available civil or criminal remedies."

The Act is to be liberally construed to protect victims of stalking by facilitating access for them to judicial protection. K.S.A. 2021 Supp. 60-31a01(b). Typically, proceedings under the Act are expedited and not long and drawn-out before a final order of protection is entered. In the meantime, and on a proper showing, the court can issue a temporary order of protection. K.S.A. 2021 Supp. 60-31a05(b). The Act calls for a final hearing within 21 days following the filing of the verified petition. At that hearing, the plaintiff must prove his or her allegation of stalking "by a preponderance of the evidence and the defendant shall have an opportunity to present evidence on the defendant's behalf." K.S.A. 2021 Supp. 60-31a05(a). But the Act does provide for a continuance of the final hearing. K.S.A. 2021 Supp. 60-31a05(c).

Here, J.D.K. filed her verified petition on October 5, 2021. The hearing on J.D.K.'s petition was set for October 19, 14 days later. At that hearing, the court noted that D.D.B. had filed an answer and counterclaim that day, neither of which had been served on J.D.K. An answer to the petition is not required under the Act, but J.D.K. was entitled to prior notice of the counterclaim. Rather than bifurcate the proceedings and conduct a final hearing that day under K.S.A. 2021 Supp. 60-31a05(a) on J.D.K.'s petition, the entire matter was continued to November 16, 2021.

9

D.D.B.'s counterclaim sought a protection from stalking order against J.D.K. He began by paraphrasing the definitions of the terms in K.S.A. 2021 Supp. 60-31a02 that are required to be shown to establish a claim of stalking. He alleges that J.D.K.'s

> "conduct over a period of time evidencing a continuity of purpose which has caused [D.D.B.] to suffer substantial emotional distress has been done knowingly and intentionally directed at [D.D.B.] and seriously alarms, annoys, torments and terrorizes [D.D.B.] and serves no legitimate purpose and has placed [D.D.B.] in reasonable fear for his safety."

He then recited a series of incidents related to the boundary dispute between the parties, which he contends constituted harassment. He concluded:

> "The defendant has suffered because of the course of actions by the plaintiff to harass the defendant and the defendant believes that the plaintiff will escalate and cause the defendant or defendant's property harm if she does not succeed with the jailing of defendant or if this court denies her a protection order."

For the relief sought on his counterclaim, he asked the court to determine

> "that the court find that a PROTECTION FROM STALKING order against the plaintiff and in favor of the defendant to be necessary and proper, that the court order a protection order against the plaintiff."

D.D.B. also sought damages in the amount of $350,000 to be determined at a later date by the court or jury.

As the title "COUNTER-CLAIM" indicates in D.D.B.'s pleading, he stated a single cause of action: a claim that he is entitled to a protection from stalking order against J.D.K. He also sought monetary damages for J.D.K.'s conduct, which he claims

10

is the basis for a protection order in his favor. But the Act does not contemplate damages as a form of relief. Under K.S.A. 2021 Supp. 60-31a06 the only relief available to a successful litigant is a protection from stalking order. Moreover, a claim for relief under the Act must be set forth in a verified pleading. K.S.A. 2021 Supp. 60-31a04. D.D.B.'s counterclaim is not verified.

Both parties testified at the initial evidentiary hearing on November 16, 2021. J.D.K. testified generally about her conflicts with D.D.B. According to J.D.K., the dispute between the parties related entirely to the disputed property line between their adjoining properties. D.D.B. testified that "everything that [J.D.K.] says, everything she's ever done has only been related to the property line." The court cut D.D.B. off as he attempted to present his case and entered a protection from stalking order in favor of J.D.K.

At the hearing on D.D.B.'s posttrial motion, the court found that D.D.B. had not been allowed to present his case at the initial trial, so the court reopened the proceedings to allow D.D.B. to present his case on December 14, 2021. D.D.B. then asked the court whether at the reopened trial "am I able to, um, do that together (unintelligible) a counterclaim to a general . . . libel and slander?" The court answered that D.D.B. could not. "[Y]ou have filed a counterclaim on a protection from abuse. . . . This is a very narrow case . . . . [T]here is no libel claim or slander claim."

D.D.B. contends that he had asserted a libel and slander counterclaim against J.D.K., which the court refused to consider when the proceedings were reopened. D.D.B. did not assert a counterclaim against J.D.K. for libel and slander. Examining D.D.B.'s responsive pleading, we find nothing that would place J.D.K. on notice that she was being sued for libel and slander for which she was in jeopardy of a judgment for damages of up to $350,000. The words "libel" or "slander" or their equivalence appear nowhere in D.D.B.'s responsive pleading. In the context of this case, even the barest of due process

11

would require that a party be informed of the cause of action being asserted and the resulting damages being sought.

Accordingly, we find no error in the district court declining to hear D.D.B.'s previously unspecified claim of libel and slander against J.D.K.

*Motion for Judgment on the Pleadings*

Finally, D.D.B. argues that the district court erred in refusing to grant his motion for judgment on the pleadings, which was raised for the first time after the initial evidentiary hearing on J.D.K.'s claim. Our review of this issue of law is unlimited. *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 639, 355 P.3d 667 (2015).

A motion for judgment on the pleadings is based on the premise that the moving party is entitled to judgment on the face of the pleadings without the necessity of a trial to determine the truth of the allegations they contain. To succeed on the motion, the movant must assume for the purposes of the motion that the facts stated in the challenged pleading are true but nevertheless are insufficient to establish a cause of action upon which relief can be granted. 302 Kan. at 638.

In his posttrial motion, D.D.B. recited a number of complaints about the evidentiary hearing on J.D.K.'s petition, but he never claimed that he had moved for judgment on the pleadings which the district court either denied or refused to consider. In fact, our review of the record discloses that there was never a motion for judgment on the pleadings filed. He simply included in his posttrial motion—without any argument, legal authorities, or reference to the required elements of a cause of action for stalking—the following prayer for relief on this nonexistent motion: "WHEREFORE, the defendant motions this court with this MOTION FOR A FINAL ORDER ON THE PLEADINGS

12

and moves this court to consider a final order in favor of the defendant according to the pleadings filed within this court." This claim of error is totally without merit.

The district court did not err by denying a request by D.D.B. for judgment on the pleadings.

*Attorney Fees*

While J.D.K. proceeded pro se before the district court, she wisely retained legal counsel to represent her in this appeal. Now J.D.K. has moved under Kansas Supreme Court Rule 7.07(b)(1) (2022 Kan. S. Ct. R. at 52) for an award of attorney fees she incurred on appeal. Under this rule we have the authority to award attorney fees on appeal in cases in which the district court has authority to award attorney fees. K.S.A. 2021 Supp. 60-31a06(f) authorizes the district court to award attorney fees to the victim in cases in which a protection from stalking order is issued. Thus, we have the authority to award fees in this case.

J.D.K.'s counsel has provided his affidavit in support of the motion. Counsel has charged J.D.K. $2,206.10 for services rendered in this appeal. This consists of 1.17 hours at $250 per hour for attorney time and 23.92 hours at $80 per hour for paralegal time. These hourly rates are the rates that have been in effect at the offices of J.D.K.'s counsel for the past three years.

As stated in *Redondo*:

"The Act contemplates that successful petitioners will receive an award of attorney fees as part of a full and fair remedy for the harm the legislature intended to guard against. That is, a victim of stalking should be permitted to shift to the stalker the expense he or she has incurred for legal representation in obtaining an order of protection. The

13

legislative policy considerations that warrant attorney-fee awards in the district court are equally applicable and appropriate on appeal. The victim should not be required to bear the legal expense of successfully upholding an order of protection on appeal." 2014 WL 802268, at *4.

J.D.K. has prevailed in this appeal. We affirm based on the conclusion that the district court did not commit reversible error in the challenged rulings in this case. D.D.B. has not challenged J.D.K.'s right to fees in this appeal, nor has he challenged the reasonableness of the fees D.D.B. seeks. Accordingly, we grant J.D.K.'s motion for attorney fees in the amount of $2,206.10 and direct that judgment be entered against D.D.B. in that amount.

Affirmed.